# Supreme Court of Florida

_____

No. SC18-1629
_____

**PETER AVSENEW,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

January 13, 2022
**CORRECTED OPINION**

PER CURIAM.

Peter Avsenew appeals his judgments of conviction of first-degree murder and sentences of death. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. As we explain below, we reverse Avsenew's convictions and sentences, and we remand this case to the circuit court for a new trial.

## BACKGROUND

Avsenew was convicted of and sentenced to death for the 2010 first-degree murders of Stephen Adams and Kevin Powell. The State presented evidence at trial that in the early morning hours of

December 26, 2010, the bodies of Adams and Powell were found at their Wilton Manors home after a concerned family member requested that law enforcement conduct a welfare check at the home. Both victims sustained multiple gunshot wounds and blunt force trauma. There were no signs of forced entry at the home, and no fingerprints were found. A bottle of bleach was found on a table near the victims' bodies. The victims' wallets, credit cards, and black Saturn SUV were missing. No murder weapons were ever found.

Avsenew was identified as a person of interest in the murders after documents bearing his name were found inside the victims' home. The murder investigation further revealed that Avsenew knew the victims and had moved into their home shortly before the murders.

The defense argued that Avsenew did not commit the murders, rather that he came home sometime after the murders, found the deceased victims, took their belongings, and left the scene.

However, the defense theory was contradicted by the State's evidence, particularly the perpetuated testimony of a material witness—Avsenew's mother, Jeanne Avsenew. Ms. Avsenew's

testimony described multiple incriminating statements made and actions taken by Avsenew shortly after the murders.

Although Avsenew raises twelve issues in this direct appeal, we address the sole determinative issue. The perpetuated testimony of Ms. Avsenew, which was conducted despite her inability to see Avsenew during her testimony, violated the requirements of rule 3.190(i)(3), Florida Rules of Criminal Procedure. Because this rule violation was not harmless error, we must reverse Avsenew's convictions and sentences and remand this case to the circuit court for a new trial.

## ANALYSIS

*The Perpetuated Testimony of Ms. Avsenew*

Due to serious health problems that rendered her unable to travel to Broward County to testify at Avsenew's trial, the trial court granted the State's motion to perpetuate the testimony of Ms. Avsenew pursuant to rule 3.190(i), Florida Rules of Criminal Procedure.

At the time of the perpetuated testimony in August 2017, Ms. Avsenew was located in Polk County. Avsenew, defense counsel, the prosecutor, and the judge were in a Broward County

courtroom. The two locations were connected remotely by audio-visual equipment. Ms. Avsenew's testimony was recorded on video, and the video of her testimony was played for the jury at Avsenew's trial in November 2017.

Ms. Avsenew testified that around 4:30 p.m. on the afternoon of December 25, 2010, Avsenew unexpectedly called her and said that he was on his way to visit her at her home in Polk County. Prior to that time, Ms. Avsenew had not seen Avsenew since September 2010, when she visited him in Broward County, and he had never visited her at her home in Polk County. Avsenew lodged at Ms. Avsenew's home from the evening of December 25 until December 27, when he was arrested for the murders.

About 6:30 p.m. on December 25, Avsenew arrived at Ms. Avsenew's home. Avsenew was accompanied by his dog, and he was driving a black Saturn SUV that he initially said he borrowed from a friend. At the time, Avsenew's brother was also at the home celebrating the Christmas holiday.

Avsenew entered the home carrying a backpack and a duffle bag. He later returned to the SUV to retrieve a tent and other

camping supplies, and he explained that he was going to travel to the Appalachian Mountains to camp.

Avsenew initially said that he left South Florida after his dog killed another dog, but he later said that he had done something bad and had gotten into trouble in South Florida. He suggested that what he had done was violent, that it was the worst thing he had ever done, and that if he got caught, he would not be able to get out of trouble. Avsenew also asked about his biological father and inquired whether his father was a violent person.

Avsenew also mentioned that he had a gun, and Ms. Avsenew got upset and told him that he needed to get rid of it. Avsenew later told her that he had gotten rid of the gun by throwing it into a lake.[1]

Avsenew also explained that he was very tired and had not slept in three days. Ms. Avsenew suggested that taking a shower would make him feel better. Avsenew took a shower, after which he commented that it felt good to get rid of the smell of bleach. Ms. Avsenew testified that she never smelled bleach on Avsenew,

---

1. The State presented testimony that a dive team searched a nearby lake for a gun, but the search was unsuccessful.

and Avsenew did not explain his comment. Avsenew also displayed a bruise on his leg and said that he was injured in a fight with "some guy."

On December 26 and 27, Avsenew went to two Walmart stores in Polk County and purchased multiple items, including camping supplies and gift cards. Avsenew told Ms. Avsenew that he was able to buy the items because a friend loaned him money. However, the State presented evidence that these purchases were made using the victims' credit cards.

Ms. Avsenew testified that Avsenew used her computer to conduct internet searches and that he became increasingly anxious as he did so. Avsenew told her that he had been searching for information on campgrounds. On December 27, Avsenew said that he had to leave the state for six months, and he and Ms. Avsenew called family members to see if Avsenew could stay with any of them.

Also on December 27, Avsenew said that he had to get rid of the SUV that he drove to Ms. Avsenew's home. Avsenew admitted that the SUV was stolen and that he lied about how he obtained it. Ms. Avsenew testified that she followed Avsenew in her car to a

nearby Walmart, where Avsenew abandoned the SUV in the parking lot.[2] Ms. Avsenew recalled that she expressed concern about being involved in whatever Avsenew was a part of and that Avsenew tried to reassure her by telling her that the parking lot surveillance cameras were not facing their direction. They left the parking lot and returned to Ms. Avsenew's home, where, upon arrival, Ms. Avsenew asked Avsenew to go to her bedroom and calm his dog.

While Avsenew was in the bedroom, Ms. Avsenew logged onto her computer to see if she could determine the content of Avsenew's internet searches. Her search revealed that Avsenew was a person of interest in a homicide investigation in Wilton Manors. Ms. Avsenew immediately left her home, went to a friend's house, and told the friend what she learned. The friend advised Ms. Avsenew to contact the police and assisted her in doing so.

---

2. The State introduced evidence that the SUV retrieved from the parking lot was the victims' missing vehicle.

Ms. Avsenew then returned to an area near her home while the police went to the home and took Avsenew into custody without incident.[3]

*Rule 3.190(i) Motion to Take Deposition to Perpetuate Testimony*

Our analysis is guided by rule 3.190(i), the Florida Rule of Criminal Procedure governing the perpetuated testimony of Ms. Avsenew. Under rule 3.190(i)(1), upon motion of the State or the defendant, the trial court may permit a witness to perpetuate trial testimony via deposition if "a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending a trial or hearing." Fla. R. Crim. P. 3.190(i)(1). The court must also find "that the witness's testimony is material, and that it is necessary to take the deposition to prevent a failure of justice." *Id.*

Here, the trial court did not abuse its discretion when it permitted the perpetuated testimony of Ms. Avsenew pursuant to rule 3.190(i). Moreover, in this appeal, Avsenew does not base his

---

3. Following Avsenew's arrest, Ms. Avsenew consented to a search of her home. The search yielded multiple pieces of physical evidence that were entered into evidence at trial.

challenge on the fact that the deposition was conducted remotely and using video technology, rather than in his physical presence. Rather, Avsenew's argument, and therefore our focus, centers on the format of the testimony which, due to the setup of the audio-visual equipment, prevented Ms. Avsenew from seeing Avsenew while she testified and thus violated rule 3.190(i)(3), which provides in relevant part:

> (3)  If the deposition is taken on the application of the state, the defendant and the defendant's attorney shall be given reasonable notice of the time and place set for the deposition.  The officer having custody of the defendant shall be notified of the time and place and shall produce the defendant at the examination *and keep the defendant in the presence of the witness during the examination.*

(Emphasis added.)  In light of the rule's requirement that the defendant be in the witness's "presence," compliance with this rule requires that the defendant and the testifying witness be able to see each other during the examination.  However, the record conclusively establishes that Ms. Avsenew was unable to see Avsenew.

At the beginning of the hearing during which Ms. Avsenew's perpetuated testimony occurred, the trial court asked her: "Can you

- 9 -

see us here in the courtroom?" Ms. Avsenew answered that she could see in the courtroom, but the trial court never confirmed that she could see Avsenew. Immediately before Ms. Avsenew's testimony began, defense counsel objected that Ms. Avsenew was unable to see Avsenew:

> **Defense Counsel:** . . . But I would renew the objection that while she's testifying, she's looking at the podium and not at our client as if she were in the courtroom. And the right to confrontation of my client to the material witness is definitely limited very much so in the perpetuation. And I'd just like to renew the objections made previously.
>
> **The Court:** Anything new from The State?
>
> **Prosecutor:** No, Your Honor.
>
> **The Court:** The Court maintains its prior rulings and the reasons stated on the record for The Court allowing the perpetuation of the testimony in this case.
> And, Counsel, if you were listening, The Court's first question was could she see us here in the courtroom, and if she could hear. So your client's confrontation rights are preserved. He's here, she can see in the courtroom and he can certainly see her. And closed circuit television use has been sanctioned and said okay by the Supreme Court of this state, as well as the Supreme Court of the United States. So until I get a definitive ruling saying that what The Court is doing is totally unconstitutional, then the defendant's 6th Amendment privilege rights are being preserved. Your objection is still overruled. . . .
>
> **Defense Counsel:** Thank you, Judge. I don't—

**The Court:** The State may call its witness.

**Defense Counsel:** Just for the record, I don't think Ms. Avsenew is able to see—

**The Court:** You can ask her when you cross-examine her.  Let's proceed.  We've delayed these proceedings long enough, Mr. Ermine.  You may proceed.

**Prosecutor:** Yes, Your Honor.  The State will call Ms. Jeanne Avsenew.

**The Court:** All right.  My clerk is going to swear Ms. Avsenew in.

Then, at the beginning of cross-examination, defense counsel asked Ms. Avsenew whether she could see Avsenew, and she stated that she could not:

**Defense Counsel:** Ms. Avsenew, you can see and hear me?

**Ms. Avsenew:** Yes, I can.

**Defense Counsel:** Can you see your son, Peter?

**Ms. Avsenew:** No.

**Defense Counsel:** Just me?

**Ms. Avsenew:** Just you.

At trial, just before the video of Ms. Avsenew's testimony was played for the jury, defense counsel objected again that Ms. Avsenew was unable to see Avsenew during her testimony.  The

- 11 -

trial court overruled defense counsel's objection, and the trial continued with the video of Ms. Avsenew's testimony being published to the jury.

However, proceeding with the testimony—despite Ms. Avsenew's inability to see Avsenew—violated rule 3.190(i)(3). The failure to ensure that Avsenew was kept in the presence of Ms. Avsenew during her testimony (in this case, her "virtual" presence) constituted a clear violation of rule 3.190(i)(3). Thus, the testimony of Ms. Avsenew was not properly admitted against Avsenew at trial. Importantly, we note that the error here appears to have stemmed from sheer indifference to Ms. Avsenew's inability to see Avsenew. The State has not argued that there is any important state interest, public policy, or necessity of the case that required the use of a deposition format in which the witness could not see the defendant. We need not and do not address whether such circumstances could permit a deviation from the strict requirements of the rule. *Cf. Harrell v. State*, 709 So. 2d 1364 (Fla. 1998).

*Harmless Error Analysis*

However, our analysis does not end with our conclusion that the perpetuated testimony of Ms. Avsenew violated rule 3.190(i)(3). We now consider whether the fact that Avsenew was not kept in the presence of Ms. Avsenew during Ms. Avsenew's testimony constituted harmless error.

Under Florida law, to establish harmless error, the State has the burden of demonstrating that there was no "reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The harmless error test "is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test" but the "focus is on the effect of the error on the trier-of-fact." *Id.* at 1139. We conclude that the error was not harmless.

Ms. Avsenew's testimony was material to the State's case against Avsenew. From Ms. Avsenew's testimony, the jury learned that Avsenew (1) visited her unexpectedly on December 25, 2010; (2) initially gave conflicting statements about how he came to possess the victims' SUV and later admitted that it was stolen;

(3) admitted to having a gun and getting rid of it; (4) initially gave one account about his basis for leaving South Florida but later told his mother that he had done something violent, something that was the worst thing he had ever done, and that he could not get out of if he was caught; (5) engaged his mother in making phone calls to relatives looking for a place for Avsenew to stay; (6) possessed camping equipment when he arrived in Polk County to visit Ms. Avsenew, discussed plans to leave Polk County and go camping in the mountains, and made additional camping equipment purchases during his time in Polk County; (7) became increasingly agitated after he started conducting internet searches on Ms. Avsenew's computer; (8) stated after he arrived at Ms. Avsenew's home that he had not slept in three days; (9) displayed a bruise that he said that he got while fighting with "some guy"; and (10) commented that he got rid of the smell of bleach after taking a shower.

We cannot overstate the harmful effect of this testimony having come from not just anyone, but defendant Avsenew's own mother. Indeed, the jury heard a recording of a phone call placed by Avsenew while he was in jail awaiting trial, wherein he

mentioned that the "lead witness against me is my mom." Without question, the impact of Ms. Avsenew's incriminating testimony on the jury would have been even greater because she is Avsenew's mother.

The State cannot demonstrate that there is no reasonable possibility that the testimony of Ms. Avsenew—a material State witness—contributed to the jury's guilty verdicts. In other words, the State cannot demonstrate harmless error because there is a reasonable possibility that the material testimony of Ms. Avsenew contributed to the jury's guilty verdicts. As a result, the admission of Ms. Avsenew's testimony against Avsenew was harmful error which requires reversal.

**CONCLUSION**

This Court does not take lightly the impact of today's decision. However, the introduction of Ms. Avsenew's testimony constituted harmful error, and we are bound to rule in a manner that remedies such error.

Consequently, we reverse Avsenew's convictions and sentences, and we remand this case to the circuit court for a new trial.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Broward County,
    Ilona Maxine Holmes, Judge
    Case No. 062011CF005061A88810

Carol Stafford Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner and Leslie T. Campbell, Assistant Attorneys General, West Palm Beach, Florida,

    for Appellee